**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STEIN & NIEPORENT LLP**
David Stein (DS 2119)
1441 Broadway, Suite 6090
New York, New York 10018
(212) 308-3444

Attorneys for Defendant

| | |
|---|---|
| Yensy Contreras, Individually, and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | DOCKET NO. 22-cv-456 (JPC) (GWG) |
| - vs. – | |
| The Winston Box, LLC, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL ARGUMENT ..................................................................................................................... 1

    I.      Plaintiff lacks standing because he has not adequately pleaded an intent to return to defendant's website. ................................................................................... 1

    II.     Winston Box's website is not a place of public accommodation under the ADA because it has no physical place of business ........................................................ 3

    III.    Plaintiff should not be given leave to amend yet again. ........................................ 9

    IV.    The Court should dismiss plaintiff's state law claims. .......................................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

<u>Cases</u> <u>Pages</u>

*Altayyar v. Etsy, Inc.*, 731 F. App'x 35 (2nd Cir. 2018) ............................................................... 9

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2nd Cir. 2007) ..................................................... 9

*Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 682 (2nd Cir. 2016). .................................. 8

*CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014) .................... 8

*Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ........................................ 5

*Dominguez v. Banana Republic, LLC*, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) .................. 5-6

*HD Brous & Co. v. Mrzyglocki*, 2004 WL 1367451 (S.D.N.Y. June 16, 2004) ................................ 7

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) ................... 8

*Jaquez v. Dermpoint, Inc.*, 2021 WL 2012512 (S.D.N.Y. May 20, 2021) ........................................ 6

*Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021), .............................. 5-6

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) .................................. 7

*Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877 (E.D.N.Y. 2018),
    *adhered to on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) .................... 9

*Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022) .................................. 6

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999),
    *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000) ................................. 4,6

*Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274 (2nd Cir. 2006) ..................................... 9

*Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022) ............................... 6-7

*Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005) ........................ 1

*United States v. Tohono O'Odham Nation*,
    563 U.S. 307, 131 S. Ct. 1723, 179 L.Ed.2d 723 (2011) ...................................................... 5

*Winegard v. Crain Commc'ns, Inc.*, 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) .......................... 6

*Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) ................................. 3-5

*Statues and Rules*

Fed. R. Civ. P. 12 ................................................................................................................................1, 10

i

**PRELIMINARY STATEMENT**

Defendant filed a motion to dismiss the First Amended Complaint in this matter, contending that plaintiff lacks standing to pursue this case because he has not pleaded the requisite intent to return to defendant's website that would entitle him to injunctive relief. In the alternative, defendant argues that plaintiff's complaint fails to state a claim for relief because it relies upon a statute that does not apply to defendant. Nothing in plaintiff's opposition papers undermines those arguments, and thus this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)

**LEGAL ARGUMENT**

**I.  Plaintiff lacks standing because he has not adequately pleaded an intent to return to defendant's website.**

In its moving papers, defendant pointed out that a plaintiff bringing a claim under the Americans with Disabilities Act is required to demonstrate an intent to return to the business (in this case, a website) in order to establish standing to obtain injunctive relief against future injury. Plaintiff apparently does not dispute this legal proposition. Instead, plaintiff argues, in essence, that websites are special under the law and that mere boilerplate recitation of an intent to return to a website is sufficient.

While defendant recognizes that the "proximity" factor considered by courts for establishing the plausibility of a return visit in the context of a physical business does not have much utility in the context of a website, that does not relieve plaintiff of the burden of pleading *specific facts* to establish that plausibility. *Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005). This is particularly important in the case of a serial plaintiff who simply files hundreds of nearly identical lawsuits, exploiting the ease of facilely

1

claiming that one intends to visit a website.[1]

Plaintiff does not, for instance, plead a specific date to return beyond "as soon as the accessibility barriers are cured" — the same generic formulation routinely rejected by the courts in ADA cases. He does not plead past visits to the site other than two visits driven by this litigation (one on January 16, 2022, with the complaint being filed on January 18, 2022, and one on March 15, 2022, with the amended complaint being filed that same day). He does not plead that he has ever bought clothing online before — let alone the frequency with which he has done so — which would make it more plausible that he would buy clothing online in this instance. He does not plead any facts to show what specific items he wanted or why, or why he would wait to purchase them from defendant at some unspecified point in the future rather than from any other retailer. (Defendant does not contend that each of these facts is required, or that other facts would not be relevant; this is merely an illustrative list.)  And as for pleading what product he intended to purchase from defendant?  Well, in his original complaint, plaintiff pleaded only the generic allegation that he "intends to purchase certain goods and/or services from Defendant's website in the future." After the flimsiness of this pleading was first identified by defendant, plaintiff subsequently filed an amended

---

[1] A search of PACER — of which the Court can take judicial notice — reveals that plaintiff filed a staggering 146 such cases in just a two-and-a-half month period from November 3, 2021 through January 18, 2021. And all of them contain essentially identical language regarding plaintiff's intent to return to the business. See, e.g., *Contreras v. Zenga Inc.*, 22-cv-451 ("Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured."); *Contreras v. Glasso Group Inc., 22-cv-299* ("Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured," altered in the amended complaint by inserting the word "unequivocally" " before "intends"); *Contreras v. Urban Office Products Inc.*, 21-cv-9681 ("Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured."); *Contreras v. Scrub Daddy, Inc.*, 21-cv-9434 ("Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured.")  The list goes on.

2

complaint that simply replaced the completely vague phrase "certain goods and/or services" with the almost-as-vague phrase "a customized subscription clothing box."

Nothing in the amended complaint proves that plaintiff would *not* return to defendant's website in the future. But the burden is on the plaintiff to affirmatively establish that it is plausible that he would. The mere conclusory statements offered by plaintiff do not push his complaint across the line from possible to plausible.

### II. Winston Box's website is not a place of public accommodation under the ADA because it has no physical place of business.

As explained in defendant's moving papers, the Second Circuit has never ruled whether a company's standalone website, with no nexus to any public-facing physical location, is a place of public accommodation for the purposes of the Americans with Disabilities Act. There is a split of authority, both nationwide and within the district courts in this circuit, as to that issue.

Defendant submits that Judge Komitee's careful decision in *Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) is most compelling. After first noting that the phrase "place of public accommodation" has been used for decades to refer to physical places rather than all types of businesses, Judge Komitee examined — as have the Circuit Courts ruling against plaintiff's interpretation of the law — the specific language of the ADA. He pointed out that the statute was very specific, listing 50 specific examples of the types of businesses covered, and that at least forty nine of them "indisputably relate to physical places." *Id*. at *3. (The fiftieth, which some courts said referred to a non-physical place, was a "travel service," but as Judge Komitee noted, there is no reason to assume that this does not refer to a physical travel agency also. *Id*. at n.1) Judge Komitee also noted that Congress made specific word choices going out of its way to indicate that it was considering only

3

physical locations — for example, "the office of an accountant or lawyer" rather than "accounting firm or law firm," and "office of a health care provider" rather than "health care practice." He further noted that the statute expressly uses the phrase "place of" public accommodation, rather than just "public accommodation," and the term "place" is generally understood to mean a physical place.

Judge Komitee then examined *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000), the Second Circuit's decision upon which so much of this Circuit's caselaw in this area of the law rests. He noted, as discussed in defendant's moving papers, that *Pallozzi* did *not* hold that the ADA applied to non-physical places. Instead, it held that given that the case involved a physical place of public accommodation indisputably covered by the ADA (an insurance office), the ADA covered discrimination in the provision of goods and services *of* that place of public accommodation. *Id.* at *6-7.

In addition, Judge Komitee considered and rejected two other related arguments sometimes relied on by courts in this area: that Congress could not have anticipated the Internet (and therefore its failure to include non-physical businesses in its coverage should not be interpreted as an intent to exclude them), and that the Internet's importance in the economy means that excluding websites from coverage would defeat the purpose of the statute. With respect to the first, Judge Komitee pointed out that non-physical businesses (for example mail-order catalogs, and television), were certainly known to Congress, and yet Congress chose not to include them; he further pointed out that Congress amended the ADA much more recently — in 2008 — and did not take any steps to clarify that non-physical businesses were included in its scope. With respect to the second point, he recognized that

"considerations of policy divorced from the statute's text and purpose could not override its meaning." *Id.* at *8 (*quoting United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731, 179 L.Ed.2d 723 (2011).)

Surprisingly — or perhaps not — plaintiff does not address the *Newsday* case; indeed, plaintiff does not even *mention* it.² Instead, plaintiff proceeds as if the issue this Court need address were so well-settled that it could be resolved perfunctorily. Indeed, to read plaintiff's memorandum of law, one would get the sense that there is an overwhelming body of caselaw on his side. But while defendant does not deny that the older line of cases in this circuit held that websites — even standalone ones — were places of public accommodations for the purposes of the ADA, an examination of that caselaw shows that there is far less than meets the eye.

Start with *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017), the earliest case cited by plaintiff. The website in question in that case was not a standalone one; it "operate[d] in tandem with, and as a point of access to, Bonobos' brick-and-mortar stores." *Id*. at *11. To be sure, that case did hold, in the alternative, that a website itself was a place of public accommodation, but that finding was not necessary to its ruling. But at least that case did hold as plaintiff says; two of the other cases that plaintiff cites do not stand for that proposition at all. Plaintiff names *Dominguez v. Banana Republic, LLC*, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) and *Lopez v. Arby's Franchisor, LLC*, 2021 WL 878735 (S.D.N.Y. Mar. 8, 2021), but *those were not even website accessibility cases*. The actual holding of each of those cases was that store gift cards were **not** places of public accommodation; any

---

² Plaintiff's attitude appears to be that any case issuing from the Eastern District rather than the Southern District should simply be ignored.

5

comments about websites were mere dicta. (Moreover, as the Court is undoubtedly aware, both Banana Republic and Arby's *do* have physical locations, so neither case could have needed to, or did, resolve the issue of whether *standalone* websites are deemed places of public accommodation.) Plaintiff's citation to *Winegard v. Crain Commc'ns, Inc.*, 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021) fares little better. First, that case arose in the context of a default judgment, not an adversarial proceeding; the issue of whether defendant's website was a place of public accommodation was never litigated. Second, nothing in the *Crain Communications* case addressed the issue confronting the court here: a business consisting of a *standalone* website.

That leaves two other cases in plaintiff's string cite, *Jaquez v. Dermpoint, Inc.*, 2021 WL 2012512 (S.D.N.Y. May 20, 2021) and the oral decision in *Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022), both of which predate the crucial *Newsday* case, and therefore did not and could not grapple with it.[3] In *Jaquez*, the court did hold that standalone websites were places of public accommodation, but it did so essentially by treating the issue as if *Pallozzi* had conclusively resolved it; it never considered the actual text of the statute.  The court's oral decision in *Athena Allergy* also did not consider the text of the statute, but — relying heavily on the *Pallozzi* case — simply said that it "would not rehash the careful analyses of Judge Engelmayer in *Del-Orden*, or Judge Weinstein in *Andrews*, or the others."

Thus, plaintiff's argument rests almost entirely on a single case, *Romero v. 88 Acres*

---

[3] The *Athena Allergy decision* was issued after *Newsday*, but the *motion* predated *Newsday*, and so the parties never raised, and the court never addressed, that case; it is not mentioned even once in Judge Failla's opinion.

6

*Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022)[4] — the only case to address *Newsday*. The *88 Acres Foods* case did — unlike the other cases relied upon by plaintiff — examine the text of the applicable statute, and (in contrast to *Newsday* as well as the Third, Fifth, Sixth, Ninth, and Eleventh Circuits) found it ambiguous. (The Fifth Circuit, which defendant did not mention in its moving papers, held it unambiguous in *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534–35 (5th Cir. 2016)) It did so almost solely based on the fact that "travel service" could in theory be a non-physical place. But (as Judge Komitee noted in *Newsday*) there is no reason to read that term in such a fashion, particularly given that it is surrounded by words that are *indisputably* physical places. ("a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment") (Note that at one point the *88 Acres Foods* decision accidentally uses the phrase "travel service**s**," which sounds more like an intangible commercial offering. But the actual statutory phrase is "a… travel service," which

---

[4] Plaintiff outrageously suggests that defendant's brief is "potentially sanctionable" for not discussing *88 Acres Foods* in its moving papers. This is procedurally improper; if plaintiff wants to make a motion for sanctions, there is a formal method for doing so. Not only has plaintiff utterly failed to comply with that method — prescribed in Fed. R. Civ. P. 11 — but plaintiff has also failed to develop any argument in that regard, dropping the insinuation into a footnote. Plaintiff cites only a completely inapposite case in that footnote, in which a court suggested that a party's "fail[ure] to cite significant contrary authority" could be sanctionable. Setting aside that the court in that case ultimately decided *not* to sanction the party — *HD Brous & Co. v. Mrzyglocki*, 2004 WL 1367451 (S.D.N.Y. June 16, 2004) — the "significant contrary authority" in that case was at least six Second Circuit opinions — i.e., binding precedent.

Here, plaintiff merely refers to one non-binding district court opinion that defendants did not mention. But not only is this not "significant contrary authority," but defendant certainly did disclose to this Court that contrary opinions existed, even if it did not provide specific case citations. (Further, it is ironic that plaintiff makes this argument, given *its* failure to contend with *Newsday*.)

7

would most reasonably be read as a single physical business — especially in 1990, when the statute was enacted.

After finding that ambiguity, the *88 Acres Foods* case relied on a policy argument: that it would be "absurd" to distinguish between shopping at Whole Foods in-store and Whole Foods online. But even if that conclusion is valid, it is not even the relevant question, since Whole Foods website *does* have a nexus to a brick-and-mortar location. The interpretation of the ADA being urged by defendant herein, as well as the *Newsday* court and five Circuit Courts of Appeal, is about distinguishing between Whole Foods in-store/online and, for example, eBay.com. (Or, in this case, thewinstonbox.com) The court also relied on isolated snippets of legislative history not part of the statute, expressing a view of the importance of eliminating discrimination. But as the Supreme Court has repeatedly cautioned, "no legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014)(reminding that it is error to use the proposition that remedial statutes should be interpreted liberally as a substitute for a conclusion grounded in the statute's text and structure." See also *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725, 198 L. Ed. 2d 177 (2017)(calling it "mistaken" for a court to "assume" that "'whatever' might appear to 'further[ ] the statute's primary objective must be the law.'")

Applying that principle, the Second Circuit has instructed that, even in the context of anti-discrimination law, "We may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of 'unlawful employment practices.'" *Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 682 (2nd Cir. 2016). Defendant respectfully suggests that this Court should heed that admonition, find the text of the statute unambiguous, and should not resort to policy arguments to expand the scope of

the ADA without express legislative authorization.

### III. Plaintiff should not be given leave to amend yet again.

In a footnote, plaintiff offhandedly requests leave to replead if defendant's motion is granted. That is not how it works in this circuit. While this Court has the discretion to grant or deny leave to amend, bare requests to amend in opposition briefs, without attaching proposed amended pleadings, are "improper" under Fed. R. Civ. P. 15. *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 904 n.4 (E.D.N.Y. 2018), *adhered to on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019). In particular, when a plaintiff does not advise the district court how the complaint's defects would be cured … it is not an abuse of discretion to implicitly deny leave to amend." *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2nd Cir. 2018) (*quoting Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2nd Cir. 2006)).

Moreover, plaintiff has *already* taken the opportunity to amend his complaint. That plaintiff failed to significantly amend his pleadings should not entitle him to yet another try. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2nd Cir. 2007) ("[P]laintiffs 'were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.'"). Plaintiff does not provide any indication of how he would plead the case differently if given a third chance to do so, and that by itself should be sufficient to deny his request.

### IV. The Court should dismiss plaintiff's state law claims.

In defendant's moving papers, it argued that if the Court dismissed plaintiff's federal claims under the ADA, it should dismiss plaintiff's state claims for the same reasons. In the alternative, the Court should decline to accept supplemental jurisdiction over plaintiff's state claims, and should therefore dismiss them as well. Plaintiff raises no contrary legal

9

argument; it simply contends that the federal claims should not be dismissed and therefore that this contingency does not apply. Therefore, this Court should dismiss plaintiff's state law claims as well.

## **CONCLUSION**

For the reasons set forth above as well as in defendant's original moving papers,, this Court should dismiss plaintiff's First Amended Complaint in this case, pursuant to Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 12(b)(6).

                                                 Respectfully submitted,

                           By:    *[signature]*

                                      David Stein

Dated: May 9, 2022